**Robert BINGNEAR, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF CHESTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 2008.

Decided Nov. 19, 2008.

Reargument Denied Jan. 13, 2009.

Arthur G. Girton, Chester, for petitioner.

Robert F. Kelly, Jr., Media, for respondent.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Before this Court is an appeal of Robert Bingnear (Claimant) from an order of the Workers' Compensation Appeal Board (Board) dated January 5, 2008. The

Board held that the City of Chester (Employer) was permitted through its Collective Bargaining Agreement (CBA) to reduce Claimant's pension benefits in an amount equal to 100% of Claimant's workers' compensation benefits. We vacate the Board's order and remand for the reasons that follow.

Claimant filed a Petition to Review Benefit Offset. No specific allegations are contained in the Petition. The record contains a document entitled "Article 143–Police Pension Fund" and a copy of the CBA between the City of Chester and the Fraternal Order of Police, Lodge # 19. Article XXIII of the CBA expressly states "The City *can* claim as an offset from the aforesaid pension the following items: (a) 100% of whatever workers' compensation benefits the retired police officer is receiving as a result of his or her service-connected disability." [1] (Emphasis added). Also included in the record is an affidavit indicating that Jerome Jones, *a claimant in another matter with similar facts,* is receiving a monthly pension of $3,891.04. There is no verbal testimony of record. Moreover, no record was made for the two hearings held in this matter.

The WCJ issued a decision on April 5, 2007 disposing of Claimant's Review Petition. The WCJ indicated that Claimant was alleging Employer, specifically the "City of Chester," was taking an improper credit in relation to his pension benefits. Reproduced Record (R.R.) at 65a. The WCJ further specified that "[i]n this Petition the Claimant alleges that the City of Chester is reducing the disability pension benefits in an amount equal to the amount of workers' compensation benefits he is receiving." [2] *Id.* The WCJ reviewed the CBA submitted by Employer. He stated that the CBA reads that a police officer who is injured in the line of duty is entitled to a service-connected disability pension equal to 100% of the officer's earnings for the fifty-two weeks immediately preceding his injury. The WCJ added that the CBA allows Employer to reduce a claimant's pension benefits in an amount equal to 100% of the workers' compensation benefits the claimant is receiving for his service-connected disability. The WCJ found that the relevant provisions of the CBA were contrary to the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708, and were not binding. Moreover, he stated the CBA cannot supersede the Act. He granted Petitioner's Review Petition and held that any offset taken by Employer must be done in accordance with the Act. The WCJ concluded Employer "is entitled to an offset of workers' compensation benefits from the pension funds received by the Claimant to the extent that they are funded by the City of Chester." R.R. at 66a.

The Board reversed in an opinion dated January 25, 2008. The Board found that Section 450(a) of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.6, permits agreements allowing for benefits that supplement the Act and prohibits those that diminish a claimant's right to workers' compensation benefits.[3] It stated that the CBA is not contrary to

---

**1.** The term "can" is highlighted because the term may be read that Employer has the option to offset claimant's pension benefits, but may elect not to do so. *See generally* Black's Law Dictionary 141 (6th ed.1991)(defining "can" as having a right or permission to do something and indicating the term is used interchangeably with "may").

**2.** As noted above, Claimant's Review Petition was devoid of any specific allegations. This information presumably was gleaned at a hearing for which there is no transcript.

**3.** Section 450 was added to the Act as part of the amendments commonly known as Act 57. It reads, in pertinent part:

Section 450 of the Act because "it is not an agreement that diminishes Claimant's entitlement to workers' compensation benefits. Rather, it is an agreement that diminishes his right to receive pension benefits." R.R. at 81a. Noting that the workers' compensation benefits paid by Employer remained unchanged and that Section 450 of the Act preserves the parties' ability to collectively bargain over supplemental benefits, the Board reversed the WCJ's grant of Claimant's Review Petition. This appeal followed.[4]

■ Claimant argues that the WCJ's order should be reinstated. Claimant contends that Employer should be precluded from reducing his pension benefits by 100% of his workers' compensation benefits when it only funded 31.73% of the pension benefits.[5] Finally, Claimant asserts that while the Board found Employer's CBA does not reduce his workers' compensation benefits but rather his pension benefits, such an argument is one of semantics and the practical effect is to reduce his workers' compensation benefits.[6]

■ Prior to addressing Claimant's arguments, we must address Employer's

(a) Any employer and the recognized or certified and exclusive representative of its employe may agree by collective bargaining to establish certain binding obligations and procedures relating to workers' compensation: Provided, however, That the scope of the agreement shall be limited to:
(1) benefits supplemental to those provided in sections 306 and 307 . . .
    (c) Nothing in this section shall allow any agreement that diminishes an employe's entitlement to benefits as otherwise set forth in this section. Any agreement in violation of this provision shall be null and void. . . .

4. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997 (Pa. Cmwlth.2007).

5. Claimant asserts in his brief that Employer funded 31.73% of his pension benefits. There is no evidence of record, however, supporting this statement.

6. Employer argues that Claimant only preserved the issue of whether it was capable of reducing his pension benefits, not whether it was capable of offsetting his workers' compensation benefits. Thus, it contends Claimant is precluded from arguing that his workers' compensation benefits are essentially being reduced when his pension benefits are offset. Objections referenced in a

petition for review are deemed to include every subsidiary question fairly comprised therein. Pa. R.A.P. 1513(d). Failure to properly raise an issue in the petition for review and in the Statement of Questions Involved as well as discuss that issue in the argument section of one's brief, however, will render an issue waived. *Muretic v. Workers' Compensation Appeal Board (Department of Labor & Indus.)*, 934 A.2d 752 (Pa.Cmwlth.2007); *AT&T v. Workers' Compensation Appeal Board (DiNapoli)*, 816 A.2d 355 (Pa.Cmwlth.2003); *McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997). The arguments raised in Claimant's Petition for Review and the Statement of Questions Involved and argument sections of his brief are not mirror images of one another. Nonetheless, the overall themes of the arguments raised are the same. Claimant contends that the WCJ was correct in stating the CBA was contrary to the Act and that Employer should be precluded from offsetting his pension benefits in an amount equal to 100% of his workers' compensation benefits. Moreover, any offset should be limited to the percentage Employer funds Claimant's pension benefits. Further, Claimant's suggestion is reasonable that he loses out when the CBA is followed and that whether you argue that the money is taken out of his pension or his workers' compensation benefits, the distinction is merely one of semantics. These arguments are inter-related. We do not agree with Employer that Claimant has waived any issues.

contention that the WCJ lacked jurisdiction to resolve any disputes regarding the CBA.

Section 401 of the Act, 77 P.S. § 407, provides that WCJs are to conduct hearings under the Act. The amount of workers' compensation benefits a claimant receives is within the jurisdiction of the WCJ and the Board. *See Hendricks v. Workers' Compensation Appeal Board (Phoenix Pipe & Tube)*, 909 A.2d 445 (Pa.Cmwlth.2006)(holding that where successive counsel had fee agreements requiring different percentages of compensation to be paid to counsel, the WCJ had jurisdiction to resolve a fee dispute as the resolution of that dispute affected the amount of ongoing benefits the claimant was due to receive). The workers' compensation authorities' responsibilities include guarding the workers' compensation system. *Id.* at 456. Neither the Board, nor a WCJ, however, has subject matter jurisdiction over proceedings that relate to benefits other than workers' compensation benefits. *Mayo v. Department of Public Welfare*, 680 A.2d 1 (Pa.Cmwlth.1996). The interpretation of a CBA is generally reserved for a grievance arbitrator. *Pennsylvania State Troopers Ass'n v. Pennsylvania Labor Relations Board*, 804 A.2d 1291 (Pa.Cmwlth.2002). Where the WCJ is responsible for addressing an alleged entitlement under the Act, he may be permitted to rule upon questions that would ordinarily be outside his jurisdiction. *See, e.g., Rossa v. Workers' Compensation Appeal Board (City of Phila.)*, 576 Pa. 349, 839 A.2d 256 (2003)(holding that a WCJ does have the authority to determine paternity for the purposes of determining eligibility of a child for benefits upon the filing of a fatal claim petition).

Moreover, the mere existence of a CBA does not preclude a WCJ from adjudicating a petition filed concerning the receipt of workers' compensation benefits. *See Department of Corrections v. Workers' Compensation Appeal Board (Clark)*, 824 A.2d 1241 (Pa.Cmwlth.2003)(whereupon this Court observed that requiring the employer to comply with a compromise and release agreement did not require the WCJ to interpret any section of the CBA).

An approach similar to the one followed in *Clark* was utilized in *Mosites Constr. Co. v. Workmen's Compensation Appeal Board (Marshall)*, 164 Pa.Cmwlth. 60, 641 A.2d 1291 (1994), where the WCJ utilized the figure contained in the CBA to determine the claimant's average weekly wage. The employer argued that the claimant's average weekly wage should be based on the wages actually earned rather than the language contained in the CBA. *Id.* at 1292. Moreover, it asserted the workers' compensation authorities had no jurisdiction over the "wage dispute" as this was a matter of a private contract. *Id.* at 1293–94. This Court, rejecting the employer's arguments, indicated that the claimant's pre-injury wage was clearly established by the CBA, that no interpretation of a private contract was required, and that all that was required was to apply the wages to which the claimant was entitled. *Id.* at 1294.

We disagree with Employer that the WCJ lacked jurisdiction to entertain Claimant's Review Petition. There can be no disagreement that the interpretation of a CBA is generally left to an arbitrator through the filing of a grievance. *Pa. State Troopers Ass'n.* Claimant argues that while he is receiving both workers' compensation benefits and pension benefits, an offset is being taken in an amount greater than that authorized by the Act. Furthermore, he posits that while the specified pension offset may be authorized by the CBA, the overall effect is to reduce the amount he receives in workers' com-

pensation benefits. He reasons that whether you reduce his pension benefits or his workers' compensation benefits, he is still receiving less benefits than he would ordinarily be entitled to under the Act. Essentially, he contends that Employer is making a distinction without a difference. Claimant's argument concerns his entitlement to workers' compensation benefits and the amount of those benefits. WCJs and the Board are charged with guarding the workers' compensation system. Consistent with *Hendricks* and *Rossa,* jurisdiction lies with the workers' compensation authorities.

Moreover, as indicated in the WCJ's April 5, 2007 decision, the CBA provides that Employer can offset Claimant's pension in an amount equal to 100% of the workers' compensation benefits he is receiving for his work-related injury. This situation appears to be similar to the one presented in *Marshall.* Whether it is ultimately determined that such an offset is or is not permitted by the Act, the WCJ was not really required to interpret language contained in the CBA. Rather, he simply relied on the express language contained therein. The holdings of *Marshall* and *Clark* further support a determination that the WCJ had jurisdiction over Claimant's Review Petition.

Employer nonetheless contends, relying on *Shaw v. Township of Aston,* 919 A.2d 303 (Pa.Cmwlth.2007), that Claimant should have pursued his claim by filing a grievance. In *Shaw,* this Court held that the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–38, does not establish or identify a specific forum in which to adjudicate the entitlement to heart and lung benefits and that disputes regarding entitlement to heart and lung benefits may be resolved through the grievance arbitration process if provided for in a mutually agreed upon CBA. Although the Heart and Lung Act does not establish a particular forum to adjudicate claims to those benefits, it is clear that disputes over workers' compensation benefits are to be adjudicated by a WCJ. *Hendricks, Rossa.* Claimant argues that he is receiving less benefits than he is otherwise entitled to under the Act. *Shaw* is not controlling here.

■ Moving to the merits of Claimant's appeal, we reiterate that the Board found that the CBA permitted Employer to offset Claimant's pension benefits based on Claimant's receipt of workers' compensation benefits. It found that this was permissible under Section 450 of the Act. The problem is that Claimant was purportedly injured in 1991.[7] Section 450 of the Act,

**7.** We use the term "purportedly" because although the WCJ indicated in Finding of Fact No. 2 of his decision that Claimant's work-related injury was sustained in 1991, there is no evidence in the original record to support this finding. Moreover, included in the Reproduced Record filed by Claimant, but not in the original record, is an opinion of the Board dated August 26, 2002. This opinion indicates that Claimant had a 1991 injury date. R.R. at 18a. Nonetheless, it further indicates that Claimant alleged another injury date of 1997. *Id.* It remanded the matter before it to the WCJ to determine whether "Claimant sustained a work injury on November 6, 1997, and, if so, how this affects the calculation of the credit [for pension benefits] to which De-

fendant is entitled." *Id.* at 19a. There is no information before us either in the record or outside of the record memorializing the resolution of this issue. When an intervening incident materially contributes to a renewed physical disability, a new injury or aggravation has occurred. *South Abington Township v. Workers' Compensation Appeal Board (Becker),* 831 A.2d 175 (Pa.Cmwlth.2003). If the claimant sustains an aggravation of an injury, the insurer on the risk at the time of the new injury is liable for benefits. *Id.* at 182. Given the fact that an aggravation of an injury constitutes a new injury, thereby generating a new injury date, it is imperative that this issue

however, was not added to the Act until five years after Claimant's injury. Thus, a question arises as to whether Section 450 can be applied retroactively or whether it is even applicable to Claimant's case.

Further complicating matters is the WCJ's conclusion that any offset must be taken in accordance with the Act and that Employer is entitled to offset workers' compensation benefits in an amount equal to the pension funds received to the extent they are funded by Employer. Although the WCJ did not state which section of the Act he was referencing, a fair reading of his decision indicates that he was relying on Section 204(a) of the Act, *as amended,* 77 P.S. § 71(a), to grant Claimant's Review Petition. That section states, in relevant part that "[t]he severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award." Again, however, the language specifically authorizing an offset for pension benefits to the extent funded by an employer was not added until 1996. *City of Philadelphia v.*

*Workers' Compensation Appeal Board (Andrews),* 948 A.2d 221, 227 (Pa.Cmwlth. 2008). It applies only to injuries sustained after the effective date of Act 57, i.e., June 24, 1996.[8]

■ Items that are not part of the record may not be considered by an appellate body on review. *Kimberly Clark Corp. v. Workers' Compensation Appeal Board (Bullard),* 790 A.2d 1072 (Pa. Cmwlth.2001). Absent evidence establishing entitlement to relief, no such relief can be granted. *See Sanders v. Workers' Compensation Appeal Board (Marriott Corp.),* 756 A.2d 129 (Pa.Cmwlth.2000) (holding penalties were not warranted for an employer's unilateral cessation of benefits when the record was devoid of any evidence establishing that the employer stopped issuing weekly indemnity payments). Moreover, briefs filed in this Court are not part of the evidentiary record and assertions of fact therein that are not supported by the evidentiary record may not form the basis of any action by this Court. *Id.* at 135. Indeed, it is a fundamental rule of appellate review that the Court is confined to the record before it, excluding matters or facts asserted in

---

be resolved in order to determine the applicability of Section 450 of the Act.

**8.** As indicated in *Andrews,* credits are allowed for pension benefits paid in lieu of compensation in the event the claimant sustained his work-related injury prior to the effective date of Act 57. *Andrews,* 948 A.2d at 226. Rather than taking a credit pursuant to a statutory mandate, however, the employer must show its entitlement to a credit on a case by case basis. *See Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Gounaris),* 714 A.2d 550 (Pa.Cmwlth.1998). The factors to be considered include the employee's contribution to the pension, if any; whether the benefits can be depleted; whether pension payment amounts would vary depending on years of service; whether the pension ceased upon recovery from the disability, and the

pension vesting period. *See Toborkey v. Workmen's Compensation Appeal Board (H.J. Heinz Co.),* 655 A.2d 636 (Pa.Cmwlth.1995)(denying employer a credit in relation to the claimant's receipt of disability pension benefits); *Oleksa v. Workers' Compensation Appeal Board (Keystone Coal Mining Corp.),* 734 A.2d 79 (Pa.Cmwlth.1999)(granting employer a credit in relation to the claimant's receipt of disability pension benefits). The critical factor, however, is whether the disability pension was an accrued entitlement that has been built up as a result of services for the employer and represents deferred compensation, or whether the payments are in relief of inability to labor. *Toborkey,* 655 A.2d at 640. The WCJ did not discuss these factors in his decision suggesting he was adjudicating Claimant's Petition utilizing Post–Act 57 law.

briefs. *Prior v. Workers' Compensation Appeal Board (Colin Serv. Sys.)*, 923 A.2d 1197 (Pa.Cmwlth.2006).

As mentioned above, the record in this case is sparse. There is no evidence of record when the Claimant was injured, when he began receiving workers' compensation benefits, or the amount of his weekly compensation benefits. There is no evidence indicating when he began receiving his pension benefits. There is no evidence concerning the amount of his monthly pension provided by employer.[9] There is no evidence that Claimant's pension benefits are being offset in accordance with the CBA. There is no evidence clarifying whether Employer is offsetting Claimant's pension benefits based on Claimant's receipt of workers' compensation benefits exclusively or whether Employer, acting as a single entity, offsets Claimant's pension benefits pursuant to the CBA while its insurer, AIG (Insurer), acting on its own

accord, also reduces Claimant's workers' compensation benefits in an amount equal to the extent Employer funded the pension benefits.[10] Insurer's brief gives strong indication that the latter is taking place, or, at least is the preferred option. The record, however, is devoid of evidence on this issue.

Without evidence of these facts of record, this Court cannot exercise meaningful appellate review. Until testimony or some other evidence indicating that Claimant's pension benefits are, in fact, being reduced in an amount equal to 100% of his workers' compensation benefits consistent with the CBA is put into the record, it is not clear that a case or controversy exists. Assuming that Employer is offsetting Claimant's pension benefits consistent with the CBA, the absence of any evidence of Claimant's injury date impedes our ability to determine whether Sections 450 or 204(a) of the

9. We reiterate that the affidavit submitted by Claimant establishes not what he is due to receive in monthly pension, but rather that Jerome Jones is to receive $3,891.04 in monthly pension payments.

10. Both Employer and Insurer filed independent appeals of the WCJ's decision with the Board. Employer filed its appeal arguing, *inter alia,* that it was not properly represented below. It further contended that "there is no dispute that the City of Chester, as the Employer, is not directly liable for compensation as they had contracted with AIG Insurance Company for direct liability of payment of workers' compensation benefits ... [T]he Workers' Compensation Judge has inappropriately referred to the City of Chester as the party taking the offset as opposed to AIG, which has perhaps led to the incorrect and inappropriate conclusion that the City of Chester's Collective Bargaining Agreement somehow is superseded by the offset provision of the Pennsylvania Workers' Compensation Act." R.R. at 71a. Employer makes similar arguments in its brief to this Court. (Respondent's Brief, pp. 13–19). The Supreme Court, in *Kramer v. Workers' Compensation Appeal*

*Board (Rite Aid Corp.),* 584 Pa. 309, 883 A.2d 518 (Pa.Cmwlth.2005), held that all employers, whether self-insured or privately insured, may seek an offset under Section 204(a) of the Act. In so doing, it reversed this Court's ruling that when an employer contracts with an insurer, and the insurer in turn becomes directly liable for a claimant's compensation, the employer is not entitled to an offset for a claimant's weekly indemnity benefits. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.),* 794 A.2d 953 (Pa.Cmwlth. 2002). Thus, there no longer is a distinction drawn between whether an employer or an insurer is directly liable for compensation for the purposes of taking an offset and any argument to the contrary must be rejected. Thus, Employer's argument appears to be based on a flawed premise. Nonetheless, it gives some indication that it believes it is entitled to reduce Claimant's pension benefits in an amount equal to 100% of Claimant's workers' compensation benefits while Insurer also reduces Claimant's indemnity benefits based on the extent Employer funded Claimant's pension benefits. A direct statement to this effect, however, is lacking in the materials submitted to this Court.

Act are even applicable in this matter. Moreover, as we have stated, there is no evidence establishing whether Employer is exclusively reducing Claimant's pension benefits pursuant to the CBA or if Employer reduces Claimant's pension benefits by an amount equal to 100% of Claimant's compensation rate while Insurer simultaneously reduces Claimant's indemnity benefits in an amount equal to the extent Employer funded those same pension benefits. Without such evidence, we cannot begin to understand the total financial loss experienced by Claimant. Moreover, we cannot address, in earnest, Claimant's contention that when Employer reduces his pension benefits by 100% of his worker's compensation benefits, any suggestion that it is only his pension benefits being affected, not his workers' compensation benefits is merely one of semantics without any monetary figures to rely upon.

We reiterate that the Act is remedial in nature and is subject to liberal construction to benefit the injured worker. *Combine v. Workers' Compensation Appeal Board (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776 (Pa.Cmwlth.2008). Moreover, it has been held, at least in interpreting Section 204(a) of the Act, that a claimant's own funds should not be used by an employer to satisfy its workers' compensation obligation. *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225 (Pa. Cmwlth.2006). Further, a fundamental presumption in ascertaining the intention of the General Assembly in the enactment of a statute is that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. *Enterprise Rent–A–Car v. Workers' Com-*

*pensation Appeal Board (Clabaugh)*, 934 A.2d 124 (Pa.Cmwlth.2007). This evidence is essential to determining the extent of Claimant's financial loss, if any, Claimant would experience if Claimant's pension benefits are reduced in accordance with the CBA or if such an offset takes place in addition to Insurer offsetting Claimant's indemnity benefits based on the extent Employer funded Claimant's pension benefits. Assuming Section 450 of the Act is applicable to this litigation, this information will be helpful in interpreting the meaning of that Section keeping in mind the principles espoused in *Combine, Hensal,* and *Clabaugh.*

Consequently, we vacate the order of the Board and remand to the Board for the purpose of further remand to the WCJ to conduct further proceedings. The parties shall submit evidence concerning Claimant's injury date, his compensation rate, and pension benefits. The Claimant should provide an explanation of his financial loss and Employer and Insurer must clarify whether they are solely reducing Claimant's pension benefits in accordance with the CBA or offsetting both Claimant's pension benefits in an amount equal to 100% of Claimant's workers' compensation benefit rate prior to any offset being taken as well as reducing Claimant's workers' compensation benefits in an amount equal to the extent of Claimant's pension that was funded by Employer.[11] The WCJ should then determine whether to grant or deny Claimant's Review Petition. In so doing, the WCJ should take into consideration Claimant's date of injury and explain why any provisions of that Act that he relies upon in making his determination are applicable to Claimant.[12]

---

11. This Court acknowledges that the parties may have stipulated to some or all of these facts consistent with 34 Pa.Code § 131.91. Nonetheless, if the parties did enter into a stipulation, such a fact is not evidenced in the record.

12. As we remanding this case for submission of evidence and a new decision, we do not

## ORDER

AND NOW, this 19th day of November, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is vacated. This matter is remanded consistent with the foregoing opinion.

Jurisdiction relinquished.

address Employer's argument that Claimant will receive a windfall if Employer is precluded from offsetting Claimant's pension benefits consistent with the CBA. This argument is not yet ripe for review.