IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Equity Forward and               :
Mary Alice Carter,              :
          Petitioners         :
                                    :
          v.                    :
                                      :
Department of Human Services,  :   No. 225 C.D. 2018
          Respondent       :   Argued: March 12, 2019

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: May 17, 2019

        Mary Alice Carter, on behalf of Equity Forward (collectively, Requester) petitions for review of the January 22, 2018 final determination of the Pennsylvania Office of Open Records (OOR), which concluded that the records requested pursuant to Items 1 and 2 of the request do not constitute public records under Section 506(d)(1) of the Right-to-Know Law (RTKL),[1] 65 P.S. § 67.506(d)(1), and that the sworn attestations and affidavit provided by the Pennsylvania Department of Human Services (DHS) and Real Alternatives sufficed to establish that the records requested pursuant to Item 3 of the request do not exist. OOR Final Determination at 9-11, Supplemental Reproduced Record (S.R.R.) at 183b-85b.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

Requester asks this Court to reverse the final determination of the OOR and order DHS to produce the requested records. Petition for Review at 5; Requester's Brief at 37. Upon review, we vacate and remand in part and we affirm in part.

By letter dated September 25, 2017, Requester submitted a request to DHS seeking records relating to Real Alternatives, a private, nonprofit, charitable corporation that provides pregnancy and parenting support services pursuant to a grant agreement (Grant Agreement) with DHS. OOR Final Determination at 1, S.R.R. at 175b. The records request sought the following:

> [Item] 1: All "Program Development and Advancement Agreements" [(PDAAs)] signed between Real Alternatives, or its predecessor groups Morning Star Pregnancy Services and Morning Star Project [Women in Need (WIN)] Advisory Council and its Pennsylvania "service providers."
>
> [Item] 2: All invoices, receipts and expenditure documentation submitted by Pennsylvania "service providers" to Real Alternatives, or its predecessor groups Morning Star Pregnancy Services and Morning Star Project WIN Advisory Council.
>
> [Item] 3: All invoices, receipts and expenditure documentation held by Real Alternatives related to the $1.42 million it spent on "advertising and promotion" in 2015.
>
> [Item] 4: All reporting related to Real Alternatives' maintenance of the Pennsylvania hotline 1-888-LIFE-AID, including number of calls; number of client referrals; names of "service providers" that received client referrals, and any other reporting related to the efficacy of the hotline.

2

OOR Final Determination at 2, S.R.R. at 176b.[2]

On November 15, 2017, DHS granted in part and denied in part the records request. DHS Response at 1-2, S.R.R. at 34b-35b. DHS denied the request with respect to Items 1, 2 and 3, but granted access to the records requested in Item 4. DHS Response at 2-3, S.R.R. at 35b-36b. DHS determined that it does not possess records responsive to Items 1, 2 or 3 and contacted Real Alternatives regarding these items of the request. DHS Response at 2, S.R.R. at 35b. In regards to Items 1 and 2, DHS communicated to Requester Real Alternatives' assertions, in relevant part:

> The documents requested are not "records" at all, let alone "public records" since they do not document a transaction or activity of an agency.
>
> The request seeks private documents of a private party. Private documents of a private party are only subject to access under Section 506(d) of the RTKL, and the PDAAs between Real Alternatives and its service providers are not directly related to any governmental function performed by Real Alternatives under a contract with any Commonwealth Agency.

DHS Response at 2-3, S.R.R. at 35b-36b. In regard to Item 3, DHS communicated to Requester Real Alternatives' assertion that "no such records exist," and that "even if the documents existed, they would not be subject to access" for the same reasons listed above. DHS Response at 3, S.R.R. at 36b. DHS noted that it "ha[d] attempted

---

[2] On October 3, 2017, the deadline by which DHS had to respond under the RTKL, DHS notified Requester that it required up to an additional 30 days to review her request pursuant to Section 902(b)(2) of the RTKL, 65 P.S. § 67.902(b)(2). DHS Letter, 10/3/17 at 1, S.R.R. at 27b. On November 1, 2017, DHS sought to extend the deadline to November 15, 2017, and Requester agreed to the extension. DHS Letter, 11/1/17 at 1, S.R.R. at 29b; Requester's E-mail, 11/2/17, S.R.R. at 32b.

3

to adequately address [the] request," and that "[t]o the extent it ha[d] misinterpreted [the] request, it submit[ted] that the request was not set forth with the . . . requisite specificity" pursuant to RTKL Section 703, 65 P.S. § 67.703.[3] *Id.*

On December 7, 2017, Requester appealed DHS's denial of Items 1, 2 and 3 of the request to the OOR. Requester's Appeal at 1-2, S.R.R. at 8b-9b. On December 14, 2017, Real Alternatives requested leave to participate and submit information in the appeal pursuant to Section 1101(c) of the RTKL, 65 P.S. § 67.1101(c), which the OOR granted on December 18, 2017. Real Alternatives' Letter, 12/14/17 at 1-2, S.R.R. at 49b-50b; OOR Final Determination at 2, S.R.R. at 176b. On January 4, 2018, DHS and Real Alternatives submitted position statements to the OOR. Real Alternatives' Position Statement at 1-7, S.R.R. at 63b-69b; DHS's Position Statement, S.R.R. at 158b-63b. In support of its position, DHS submitted the sworn attestations of Andrea Bankes, Administrative Officer for DHS's Office of Administration, and Karen Herrling, Director of DHS's Office of Social Programs.

Bankes attested that: 1) she is DHS's Open Records Officer for RTKL requests and her duties include "coordinat[ing] the collection of documents in response to RTKL requests"; 2) she received the RTKL request currently at issue and "sent it to [DHS's] Office of Social Programs for response"; 3) "Herrling in . . . [DHS's] Office of Social Programs is the contact for the [Real Alternatives] [G]rant [A]greement"; 4) she created an electronic folder for responsive records, into which Herrling placed one document responsive to Item 4 of the request; 5) "Herrling responded that she did not possess records responsive to the first three [Items] of the

---

[3] Section 703 of the RTKL provides, in relevant part: "A written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . ." 65 P.S. § 67.703.

request but that [Real Alternatives] may possess some of the requested records"; and 6) Herrling forwarded the RTKL request to Real Alternatives, and Real Alternatives responded that Items 1 and 2 seek private documents that are not subject to disclosure under the RTKL and that no records responsive to Item 3 exist. Bankes Attestation at 1-2, ¶¶ 1-3, 5-10, 12 & 14, S.R.R. at 165b-66b.

Herrling attested that: 1) her "responsibilities include monitoring . . . [DHS's] [G]rant [A]greement with Real Alternatives . . . to provide counseling, referral, and other specified services for alternatives to abortion"; 2) she is "[DHS's] contact with [Real Alternatives]"; 3) she received and reviewed the RTKL request and could not locate any records responsive to Items 1, 2 or 3; 4) "[DHS] does not receive the records requested in [Items] 1, 2, and 3 of the request in the general course of monitoring the [G]rant [A]greement with [Real Alternatives]"; 5) she informed Real Alternatives of the RTKL request and that Real Alternatives provided her with a response "denying the request for the records and submitting an explanation for its denial"; and 6) "[Real Alternatives] submits expenditure reports to [DHS] showing the amounts paid to the service providers and those records were provided to the request[e]r in response to an earlier RTKL request." Herrling Attestation at 1-2, ¶¶ 2-4, 7, 10, 12, 14, 16 & 21, S.R.R. at 167b-68b.

Real Alternatives provided an affidavit from its president, Kevin L. Bagatta, to support its position. Bagatta stated that: 1) "Real Alternatives entered into [the] [G]rant [A]greement in 2012 with [DHS] to administer Pennsylvania's Alternatives to Abortion Services Program (the Program)"; 2) "[u]nder the Grant Agreement, Real Alternatives only has eleven express 'deliverables'—i.e., documents—that it is required to deliver to [DHS]," which include "[t]welve Monthly Expenditure Reports in accordance with Rider 1, ¶ 2C"; 3) "Real

Alternatives administers delivery of its services under the Program through a network of twenty-eight, independent 'vendor service providers' [that] operate ninety facilities throughout the Commonwealth"; 4) "Real Alternatives' service providers do not have a contract with [DHS]; Real Alternatives' service providers have a contract with Real Alternatives"; 5) "Real Alternatives generates a monthly invoice for each service provider for services rendered that are reimbursable under the Grant Agreement (the Service Provider Monthly Invoice)," but that it "is not given to or received by [DHS]," as it "is not among the negotiated 'deliverables' required between Real Alternatives and [DHS] under the Grant Agreement"; 6) "[i]nstead, [DHS] only receives a monthly report aggregating all services provided by all service providers, which services are reimbursable under the Grant Agreement," 7) "[t]his monthly report is the 'actual expenditure report' referenced in Rider 1, ¶ 2C of the Grant Agreement, and is among the deliverables referenced in the Grant Agreement"; and 8) "[t]his monthly, actual expenditure report is the only document used by [DHS] to pay for services under the Grant Agreement." Bagatta Affidavit at 1-5, ¶¶ 8, 15-16, 18, 29, 32-36, S.R.R. at 71b-75b.

Bagatta further stated that "[b]oth Real Alternatives and the service providers desired, among other things, to develop and advance other life affirming programs both locally and nationally," and that "the service providers hired Real Alternatives to accomplish that mission." Bagatta Affidavit at 4, ¶ 21, S.R.R. at 74b. Bagatta stated that "[t]hey did so through a separate and distinct, voluntary private agreement called the Program Development and Advancement Agreement (PDAA)." *Id.* Bagatta averred that "[t]he PDAAs are private, voluntary agreements between private contracting parties," that [DHS] is not a party to the PDAAs," that "[t]he PDAAs are not subject to approval by [DHS]," and that "[t]he PDAAs are not

6

referenced anywhere in the Grant Agreement since they are, as noted, private agreements between private contracting parties, completely unrelated to services provided by Real Alternatives under the Grant Agreement." Bagatta Affidavit at 4, ¶¶ 24-27, S.R.R. at 74b.

The parties did not request a hearing before the OOR, but Requester sought *in camera* review of the withheld records by the OOR. OOR Final Determination at 4, S.R.R. at 178b. However, the OOR declined to conduct an *in camera* review, determining that it had "the requisite information and evidence before it to properly adjudicate the matter." *Id.* The OOR issued its Final Determination on January 22, 2018. OOR Final Determination at 12, S.R.R. at 186a. The OOR determined that, "[i]n the absence of any competent evidence that [DHS] acted in bad faith or that additional records responsive to Items 1 and 2 exist," the Herrling attestation sufficed to establish that "[DHS] does not actually possess the records responsive to Items 1 and 2 of the Request." OOR Final Determination at 6, S.R.R. at 180b (citing *McGowan v. Pa. Dep't of Envtl. Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014)).

Further, the OOR determined that the records sought in Item 1 of the Request "are not accessible under [RTKL] Section 506(d)(1)" because they "do not directly relate to Real Alternatives' performance of a government function[.]" OOR Final Determination at 9, S.R.R. at 183b. The OOR accepted the affidavit submitted by Real Alternatives as adequate evidence to support "that [DHS] is not a party to the PDAAs, [DHS] does not review the PDAAs, and the PDAAs are separate and distinct from the services that Real Alternatives performs under the Grant Agreement." *Id.* The OOR reasoned that although "Real Alternatives acknowledges that it performs a governmental function" pursuant to the Grant Agreement with

7

DHS, the requested records "do not directly relate to the performance of that governmental function because the PDAAs are private agreements between Real Alternatives and its private service providers whereby the service providers hired Real Alternatives for work wholly unrelated to the work to be performed under the Grant Agreement." OOR Final Determination at 8, S.R.R. at 182b (internal punctuation and quotation marks omitted). Thus, the OOR concluded that "the records requested in Item 1 of the Request do not directly relate to Real Alternatives' performance of a governmental function and are not accessible under Section 506(d)(1)." OOR Final Determination at 9, S.R.R. at 183b.

With respect to Item 2, the OOR concluded that the requested records are also not accessible under RTKL Section 506(d)(1). OOR Final Determination at 9, S.R.R. at 183b. The OOR accepted the affidavit submitted by Real Alternatives as sufficient evidence to establish that "the Service Provider Monthly Invoices are not required under the terms of the [Grant] [A]greement with [DHS]," that they "are not provided to [DHS]," and that "[DHS] does not review or approve them." *Id.* Thus, the OOR determined that the records requested pursuant to Item 2 of the Request "are not subject to public access under [RTKL] Section 506(d)(1)." OOR Final Determination at 11, S.R.R. at 185b. The OOR further noted that because these records "are not directly related to Real Alternatives' Grant Agreement with [DHS], the OOR need not consider whether the records are subject to any exemptions under the RTKL." OOR Final Determination at 11 n.2, S.R.R. at 185b.

With respect to Item 3 of the request, the OOR reviewed the attestations and affidavit provided by DHS and Real Alternatives and found that "[DHS] and Real Alternatives have demonstrated that the [requested] records . . . do not exist." *Id.*

8

We begin with an overview of the RTKL. "The objective of . . . [this] [l]aw . . . is to empower citizens by affording them access to information concerning the activities of their government." *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012). Further, the RTKL is remedial in nature and is "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Pa. Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1122 (Pa. Cmwlth. 2015). "[C]ourts should liberally construe the RTKL to effectuate its purpose[.]" *Barnett v. Pa. Dep't of Pub. Welfare*, 71 A.3d 399, 403 (Pa. Cmwlth. 2013).

Before this Court,[4] Requester argues that the OOR should have found that the records requested pursuant to Items 1 and 2 of the request constitute public records under Section 506(d)(1) of the RTKL, and that DHS had constructive possession of these records. Requester's Brief at 9 & 26-32. Further, Requester challenges the OOR's determination that the records requested pursuant to Item 3 of the request do not exist. *Id.* at 9 & 31-32.

In support of her assertion that DHS violated various requirements of the RTKL, Requester asserts that "DHS abdicated its statutory responsibility under [S]ection[s] 305, 707, 901 and 903[5] [of the RTKL] in responding to this request for

---

[4] "This Court's standard of review of a final determination of the OOR is *de novo* and our scope of review is plenary." *Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014). "As to factual disputes, this Court may exercise functions of a fact-finder, and has the discretion to rely upon the record created below or to create its own." *Dep't of Labor & Indus. v. Heltzel*, 90 A.3d 823, 828 (Pa. Cmwlth. 2014) (en banc) (citing *Bowling v. Office of Open Records*, 75 A.3d 453 (Pa. 2013)). However, "pure questions of law . . . do not implicate our potential role as the fact-finder." *Id.*

[5] Requester additionally argues that her request was "sufficiently specific," contrary to DHS's contention in its denial "that the request for records was not specific per the requirements of [S]ection 703" of the RTKL. Requester's Brief at 24 & 26 (citing *Carey v. Dep't of Corr.*, 61 A.3d 367 (Pa. Cmwlth. 2013)); *see also* DHS Denial at 3, S.R.R. at 36b. However, Requester needlessly argues that her request satisfied Section 703 of the RTKL, because "[DHS] agreed that

9

records, and the OOR erred by not addressing the agency's flawed response." *Id.* at 18.

Requester contends that both DHS and Real Alternatives violated Section 707 of the RTKL by failing "to take certain action . . . [required when] assert[ing] that a record is exempted as a trade secret or as confidential proprietary" information. Requester's Brief at 22-23. However, Section 707 is not applicable here, because Real Alternatives never submitted the records in question to DHS. *See* Section 707 of the RTKL, 65 P.S. § 65.707 (providing that "[a]n agency shall notify a third party of a request for a record if the third party provided the record [to the agency] and included a written statement signed by a representative of the third party that the record contains a trade secret or confidential proprietary information"). Moreover, as noted by both Real Alternatives and DHS, although Real Alternatives initially asserted that the records requested pursuant to Items 1 and 2 were exempt from disclosure as confidential proprietary information and trade secrets, it did not pursue this argument before the OOR, so that argument is no longer at issue. *See* DHS Response, 11/15/17 at 2-3, S.R.R. at 35b-36b; DHS's Brief at 16; Real Alternatives' Brief at 16.

We further note that Requester fails to cite any authority or develop any argument in support of her claim that DHS failed to comport with Sections 305 and 903 of the RTKL. *See* Requester's Brief at 18. Requester therefore waived her argument with respect to these RTKL sections. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived").

---

the request was sufficiently specific before the OOR." DHS's Brief at 9 n.5 (citing DHS's Argument to OOR at 3, S.R.R. at 160b). We therefore need not address this issue.

Requester argues that DHS failed to comply with Section 901 of the RTKL in responding to the request by failing to make an independent substantive determination as to whether the requested records constitute public records, instead providing a response obtained from Real Alternatives. Requester's Brief at 20 & 22.

Section 901 of the RTKL requires that "[u]pon receipt of a written request for access to a record, an agency shall make a good faith effort[6] to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record." 65 P.S. § 67.901.

Regarding an agency's obligations under RTKL Section 901 after receiving a request, this Court has held that "[w]hen records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, *including third-party contractors*." *Uniontown Newspapers, Inc. v. Dep't of Corr.*, 185 A.3d 1161, 1172 (Pa. Cmwlth. 2018) (single judge op.) (emphasis added) (citing *Breslin v. Dickinson Twp.*, 68 A.3d 49, 54 (Pa. Cmwlth. 2013)). Because the records here are not in the possession of an agency, the records are initially not presumed to be public. *See UnitedHealthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 957 (Pa. Cmwlth. 2017) (stating that one may preliminarily conclude that "[w]ithout [agency] possession, records are not presumed public") (citing Section 305(a) of the RTKL, 65 P.S. § 67.305(a)). In determining whether records that are generated and possessed by a third-party contractor are public, the proper statutory

---

[6] *See infra* note 12.

rubric for analysis is not Section 901, but, rather Section 506(d) of the RTKL.[7] *Baron*, 171 A.3d at 957.

> Section 506(d)(1) of the RTKL provides as follows:
>
> A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1).

> Relative to Section 506(d)(1), we have stated:
>
> the agency is required to take reasonable steps to secure the records from the [contractor] and then make a determination if those records are exempt from disclosure. If the third party refuses to produce the records because they are not directly related to the governmental contract, the third party may refuse to turn those records over to the governmental agency on that basis. The agency shall then inform the request[er] of the reason for the denial and the request[er] can take an appeal to the OOR.

---

[7] To the extent Requester is attempting to make a constructive possession argument—that is the "concept of accessing records 'of' an agency that are outside any agency's possession, but are within its legal custody or control"—it is a "distinct concept from agency possession under Section 506(d), which applies to contractor records only." *Baron*, 171 A.3d at 958. As the disputed items in the request concern contractor records, the concept of constructive possession is misplaced. *See id.* at 960 (stating, "constructive possession under Section 901 is not the proper mechanism to reach records of a third-party contractor" and that Section 506(d)(1) governs access).

*Staub v. City of Wilkes-Barre* (Pa. Cmwlth., No. 2140 C.D. 2012, filed Oct. 3, 2013), slip op. at 6-7.[8]

"We recognize Section 506(d)(1) is the General Assembly's effort to preserve 'some level of public access to information about governmental functions . . . where an agency chooses to contract out the performance of that function to a third-party.'" *Baron*, 171 A.3d at 963 (quoting *Allegheny Cty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1039 (Pa. Cmwlth. 2011)). This Court has observed that "Section 506(d)[1] prescribes more restricted access precisely because it applies to private entities." *Allegheny Cty. Dep't of Admin. Servs. v. Parsons*, 61 A.3d 336, 346 (Pa. Cmwlth. 2013). "The General Assembly . . . used the term 'governmental function' to limit access to only those records in a contractor's possession that relate to that function, not other records that a contractor maintains during the normal scope of business." *E. Stroudsburg Univ. Found. v. Office of Open Records*, 995 A.2d 496, 504 (Pa. Cmwlth. 2010). Further, "Section 506(d)(1) does not reach all records in possession of a private contractor that relate to the governmental function; rather, the records reached are only those that relate to *performance* of that function." *Parsons*, 61 A.3d at 346 (emphasis in original); *see also A Second Chance, Inc.*, 13 A.3d at 1038 (noting that, "[f]or example, material used in preparation for a bid for a government contract would not be subject to access because those records do not directly relate to carrying out the governmental function"). This Court has "confirmed the direct relationship must pertain to the *performance* of the governmental function." *Baron*, 171 A.3d at 963

---

[8] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. 210 Pa. Code § 69.414(a).

Therefore, DHS was required to, and did, contact the third-party contractor, Real Alternatives, to request the records, and Requester does not dispute this.

(citing *Parsons*, 61 A.3d 336) (emphasis in original). "This finely drawn distinction is critical to properly analyzing and applying [Section 506(d)(1)]." *Parsons*, 61 A.3d at 346. "Accordingly, non-exempt records of a third party may be subject to disclosure, provided the third party in possession has a contract with the agency to perform a governmental function, and the information directly relates to the performance of that function." *Dental Benefit Providers, Inc. v. Eiseman*, 86 A.3d 932, 939 (Pa. Cmwlth. 2014), *aff'd*, 124 A.3d 1214 (Pa. 2015).

Item 1 of the request seeks: "[a]ll 'Program Development and Advancement Agreements' [PDAAs] signed between Real Alternatives, or its predecessor groups Morning Star Pregnancy Services and Morning Star Project WIN Advisory Council and its Pennsylvania 'service providers.'" DHS Response at 1, S.R.R. at 34b. Real Alternatives contends that the requested records do not constitute "public records" under RTKL Section 506(d)(1), because "the PDAAs do not relate to the performance of [the governmental] function at all, let alone directly relate to it." Real Alternatives' Brief at 20-21. Real Alternatives maintains that "the PDAAs are [] private agreements between Real Alternatives and its private service providers whereby the service providers hired Real Alternatives for work wholly unrelated to the work to be performed under the Grant Agreement." *Id.* at 21 (citing Bagatta Affidavit at 4-5, S.R.R. at 74b-75b). Real Alternatives argues that "Section 506(d) requires a 'direct' connection between the record sought and the government function performed," and that "mere 'possible' or 'indirect' connections do not suffice." *Id.* at 22 (citing *Giurintano v. Dep't of Gen. Servs.*, 20 A.3d 613, 615 (Pa. Cmwlth. 2011)).

As noted by the OOR, Real Alternatives does not dispute that it performs a governmental function pursuant to the Grant Agreement with DHS.

14

OOR Final Determination at 8-9, S.R.R. at 182b-83b; Real Alternatives' Brief at 20-21. The Grant Agreement broadly states: "[Real Alternatives] must arrange for the provision of direct alternatives to abortion services, statewide, to clients requiring alternatives to abortion services." Grant Agreement, Rider 2, Work Statement at 1, S.R.R. at 85b. Real Alternatives acknowledges that it performs a governmental function—"namely, [t]o provide counseling, referral, and other specified services for alternatives to abortion." OOR Final Determination at 8, S.R.R. at 182b (internal quotation marks omitted). Thus, the deciding question is whether the records requested pursuant to Item 1 "directly relate" to the performance of that governmental function.

The Bagatta affidavit submitted by Real Alternatives indicates that the services under the Grant Agreement are provided by 28 service providers throughout the Commonwealth. Bagatta Affidavit at 3, ¶ 16, S.R.R. at 73b. Real Alternatives notes that those service providers have a contract with Real Alternatives but not with DHS. Bagatta Affidavit at 4, ¶ 18, S.R.R. at 74b. Real Alternatives asserts that its service providers hired Real Alternatives to develop and advance other "life affirming" programs both locally and nationally and that those additional "life affirming" programs are the subject of separate and distinct contracts with the service providers called PDAAs. Bagatta Affidavit at 4, ¶ 21, S.R.R. at 74b.

Real Alternatives also claims that the requested PDAAs are "completely unrelated to services provided by Real Alternatives under the Grant Agreement." *See* Bagatta Affidavit at 4, ¶¶ 21 & 24-27, S.R.R. at 74b. However, Real Alternatives never asserts and the OOR never identifies the difference between the governmental function provided in the Grant Agreement ("direct alternatives to abortion services") and the claimed subject matter of the PDAAs ("life affirming"

15

programs). The Bagatta affidavit claims that "[DHS] is not a party to the PDAAs," "[t]he PDAAs are not subject to approval by [DHS]," and "[t]he PDAAs are not referenced anywhere in the Grant Agreement[.]" Bagatta Affidavit at 4, ¶¶ 25-27, S.R.R. at 74b. However, none of these considerations are determinative of whether the documents requested directly relate to performance of the governmental function that was undertaken by Real Alternatives. This Court has previously noted:

> Section 506(d) may reach records that are not in an agency's possession, custody or control provided the third party in possession has a contract with the agency to perform a governmental function, *and* the information directly relates to the performance of that function. We underscore[] that Section 506(d) does not involve only possession or location, and we note[] the RTKL renders such limitations irrelevant to access. We explained that the direct relationship that must be shown is to the performance of the governmental function, and not records that are incidental to preparation for the contract, or to the contractor's day-to-day operations unrelated to the services performed. The records must "'directly' relate to carrying out the governmental function. *E. Stroudsburg Univ. Found.*, [995 A.2d at 504].

*Parsons*, 61 A.3d at 341-42 (emphasis in original). Simply because the Grant Agreement does not make reference to a particular service provider's contract does not mean that the services being provided do not relate to the governmental function that was delegated to Real Alternatives by DHS.

We acknowledge that affidavits submitted by a third party which has contracted with an agency constitute "competent evidence, and sufficient proof under the RTKL." *Baron*, 171 A.3d at 958 (citing *Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515 (Pa. Cmwlth. 2011)). However, the affidavits submitted here fall short

16

of addressing the nature of the programs that are provided under the requested PDAAs and explaining how they are not directly related to the governmental function at issue. Rather, the Bagatta affidavit is conclusory[9] in that it states that the PDAAs are "completely unrelated to services provided by Real Alternatives under the Grant Agreement," but never identifies the services provided under the PDAAs that are not part of the program for which the DHS grant was provided. As such, the OOR had no basis to assess whether the conclusory statement that the PDAAs were unrelated to the governmental function was factually accurate.

We further note that the Bagatta affidavit refers to "vendor service providers," "independent service providers" and "service providers" in various paragraphs and sections. Bagatta Affidavit at 4, ¶¶ 16-18 & 21-23, S.R.R. at 73b-74b. Interchangeably using these terms throughout the affidavit creates ambiguity, rendering it impossible for the reader to reasonably discern whether the service provider referred to in a given item of the affidavit is one that provides service under the Grant Agreement, under the PDAAs or both. As such, the Bagatta affidavit is insufficient to support a conclusion that the PDAAs are not directly related to the governmental function identified in the Grant Agreement.

After review of the record, we are unable to evaluate whether the PDAAs requested pursuant to Item 1 are directly related to Real Alternatives' performance of the governmental function in question. The absence of sufficient

---

[9] Affidavits must be detailed and nonconclusory in order to constitute sufficient evidence to establish that a record requested under the RTKL may be withheld. *See Pa. Dep't of Educ. v. Bagwell*, 131 A.3d 638, 658 (Pa. Cmwlth. 2015) (finding that an affidavit that was "conclusory and vague" failed to establish that the requested records were either privileged or exempt from disclosure under the RTKL); *Office of Governor v. Scolforo*, 65 A.3d 1095, 1104 (Pa. Cmwlth. 2013) (holding that an affidavit that was "not detailed, but rather conclusory . . . [was] not sufficient, standing alone, to prove that the [redacted information was] exempt from disclosure" under the RTKL).

17

sworn statements or testimony as to the "scope, nature, and extent" of Real Alternatives' and the service providers' contractual obligations under the PDAAs prevents meaningful appellate review. *See A Second Chance, Inc.*, 13 A.3d at 1040. Accordingly, we vacate the OOR's determination as to Item 1 and remand to the OOR to evaluate whether the PDAAs are directly related to Real Alternatives' performance of a governmental function under the Grant Agreement. *See id.* (citing *Bingnear v. Workers' Comp. Appeal Bd. (City of Chester)*, 960 A.2d 890 (Pa. Cmwlth. 2009) (vacating and remanding where record inadequate for judicial review)).

Item 2 of the request seeks "[a]ll invoices, receipts and expenditure documentation submitted by Pennsylvania 'service providers' to Real Alternatives, or its predecessor groups Morning Star Pregnancy Services and Morning Star Project WIN Advisory Council." OOR Final Determination at 2, S.R.R. at 176b. Real Alternatives contends that the service provider[10] monthly invoices "do not 'directly relate' to the governmental function Real Alternatives performs." Real Alternatives' Brief at 23. Real Alternatives asserts that "the Grant Agreement between Real Alternatives and [DHS] only calls for Real Alternatives to produce 11 deliverables, none of which are the Service Provider Monthly Invoices." *Id.* at 24 (citing Bagatta Affidavit at 2-3, S.R.R. at 72b-73b). Real Alternatives maintains "that the delegated government function . . . is fully accomplished by Real Alternatives with the 11 deliverables," such that these records "are the only ones 'directly related' to the government function performed." *Id.* Real Alternatives further contends that even

---

[10] Again, it is unclear which "service provider" is being referred to in this assertion—the service providers under the Grant Agreement, the service providers that are parties to the PDAAs or both.

if the service provider monthly invoices are accessible, they are nevertheless subject to redaction. *Id.* at 25.

Upon review, we find that the OOR erred in its analysis with respect to Item 2. It is of no consequence that Real Alternatives did not or was not required to deliver to DHS monthly invoices for each service provider under the Grant Agreement.[11] *See Parsons*, 61 A.3d at 344 (reasoning that "[r]egardless of whether the[] [requested] records were submitted to the County, they must have a direct relationship to [the third-party contractor's] contractual obligations" in order to be accessible under RTKL Section 506(d)(1) and noting that "limit[ing RTKL] Section 506(d)(1) to only those records provided to agencies . . . would render much of the provision's language superfluous"). A determination of whether records in the possession of a private entity that has contracted with a government agency to perform a governmental function must be disclosed depends on whether the documents directly relate to the performance of that governmental function. The OOR erred in confining its analysis to whether DHS had the documents in its possession and whether the Grant Agreement required Real Alternatives to submit the requested records to DHS.

"[I]t would undermine the clear aim of RTKL Section 506(d)(1)— which recasts certain third-party records bearing the requisite connection to

---

[11] Notably, the Bagatta affidavit focuses on whether the documents are provided to or received, and thus in the possession of, DHS. *See* Bagatta Affidavit at 5, S.R.R. at 75b. It does not assert that the documents are not in the possession of Real Alternatives. *See* Bagatta Affidavit at 1-5, S.R.R. at 71b-75b. In *Dental Benefit Providers, Inc. v. Eiseman*, 124 A.3d 1214 (Pa. 2015), our Supreme Court held that because the government agency did not have an actual contract with the dental *subcontractors* which had possession of the requested records, the agency was not required to provide those records pursuant to Section 506(d)(1) of the RTKL. *Id.* at 1223. Thus, the OOR could not compel disclosure of any materials in the hands of the third-party subcontractors. *See id.* Here, the request is for invoices, receipts and expenditure documentation in the possession of the party with which DHS has contracted, not a third party subcontractor.

19

government as public records 'of the [government] agency to require that [] the materials actually be 'of such agency' in the first instance." *SWB Yankees*, 45 A.3d at 1044. Requiring that the requested documents be deliverable under the contract in question would also mean that private entities performing governmental functions could avoid disclosure of information relative to the performance of that governmental function simply by negotiating a contract that does not require disclosure, thus subverting the requirements of the RTKL. The OOR was required to determine whether the records sought directly relate to the performance of the governmental function. Relying on whether the documents were required to be provided by the contract is not the applicable framework the OOR should have utilized in determining whether the records are required to be disclosed. We reiterate, however:

> Section 506(d) prescribes more restricted access precisely because it applies to private entities. Section 506(d) does not reach all records in possession of a private contractor that relate to the governmental function; rather, the records reached are only those that relate to *performance of* that function. . . . This finely drawn distinction is critical to properly analyzing and applying the provision.

*Parsons*, 61 A.3d at 346 (emphasis in original).

The OOR erred when it failed to analyze whether there were documents responsive to Item 2 which directly relate to the performance of the governmental function. Real Alternatives admits that it does "generate[] a monthly invoice for each service provider for services rendered that are reimbursable under the Grant Agreement." Bagatta Affidavit at 4-5, ¶¶ 29 & 32-33.[12] We acknowledge that

---

[12] DHS also receives a monthly report aggregating all services provided by all service providers "that are reimbursable under the Grant Agreement and this document is used by [DHS]

20

"under our precedent, mere cost information does not directly relate to performance of a governmental function." *Baron*, 171 A.3d at 964 (citing *Buehl v. Office of Open Records*, 6 A.3d 27 (Pa. Cmwlth. 2010) (noting that "[t]o the extent the [r]equested [r]ates represent[ed] no more than the costs of services, as on a cost report, the relationship [was] not direct" under RTKL Section 506(d)(1))). Nevertheless, because the OOR did not evaluate whether the records requested pursuant to Item 2 directly relate to Real Alternatives' performance of a governmental function under the Grant Agreement, the OOR determination relative to Item 2 is vacated and we must remand to the OOR for further proceedings on this matter. *See Baron*, 171 A.3d at 947 (remanding to the OOR "so it may analyze Section 506(d)(1) of the RTKL" when the OOR "did not analyze the direct relationship of [rates paid by third-party contractors to service providers] to the governmental function the [third-party contractors] provide"). Should the OOR determine that these constitute public records under RTKL Section 506(d)(1), a determination then must be made as to whether these documents are considered "invoices, receipts and expenditure documentation submitted by Pennsylvania 'service providers' to Real Alternatives," as requested.

Item 3 of the request seeks: "[a]ll invoices, receipts and expenditure documentation held by Real Alternatives related to the $1.42 million it spent on 'advertising and promotion' in 2015." Requester challenges the OOR's determination that Real Alternatives does not possess these records. *See* Requester's Brief at 31-32. Requester asserts that Herrling's attestation that she was unable to

---

to pay for services under the Grant Agreement." Bagatta Affidavit at 5, ¶¶ 34 & 36. Herrling attested that "[Real Alternatives] submits expenditure reports to [DHS] showing the amounts paid to the service providers and those records were provided to the request[e]r in response to an earlier RTKL request." Herrling Attestation at 2, ¶ 21, S.R.R. at 168b.

locate any records responsive to Item 3 of the request is "irrelevant," because "[t]he question isn't whether the records are in her physical possession, but rather, whether the agency is required to obtain them under [RTKL Section] 506(d)." *Id.* at 31-32. Requester maintains that the information requested in Item 3 "is public record and should be held so by the Court." *Id.* at 32.

This Court has repeatedly held that "an agency may satisfy its burden of proof [under the RTKL] that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *City of Harrisburg v. Prince*, 186 A.3d 544, 560-61 (Pa. Cmwlth. 2018) (citing *Smith Butz, LLC v. Pa. Dep't of Envtl. Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016)); *see also Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) (holding that submission by an agency of "both sworn and unsworn affidavits that it was not in possession of the [requested record and] that such a record [did] not . . . exist" was "enough to satisfy [its] burden of demonstrating the non-existence of the record in question," reasoning that "obviously [an agency] cannot grant access to a record that does not exist"). Further, we have found that "[i]n the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, the averments in the affidavits should be accepted as true." *City of Harrisburg*, 186 A.3d at 560–61 (citing *Smith Butz, LLC*, 142 A.3d at 945 (brackets omitted)).

Here, DHS and Real Alternatives provided sworn attestations and an affidavit attesting that the records requested pursuant to Item 3 do not exist. Herrling attested on behalf of DHS that, "[a]fter searching [her] records, [she] did not physically have any records responsive to paragraph[] . . . 3 of the request." Herrling

22

Attestation at 1, ¶ 10, S.R.R. at 167b. In the affidavit provided on behalf of Real Alternatives, Bagatta stated the following:

> Real Alternatives does not possess any invoices, receipts and expenditure documentation related to "the $1.42 million" Real Alternatives purportedly spent on "advertising and promotion" in 2015, presumably in Pennsylvania.
>
> More specifically, Real Alternatives did not spend that sum on "advertising and promotion" in 2015, and accordingly has no documents responsive to the request.

Bagatta Affidavit at 5, ¶¶ 38-39, S.R.R. at 75b.

Notably, Requester very specifically requested documentation related to "the $1.42 million" Real Alternatives purportedly spent on "'advertising and promotion' in 2015." Real Alternatives responded to that specific request, averring that it does not possess records pertaining to the "$1.42 million" Real Alternatives purportedly spent on "advertising and promotion" in 2015. Real Alternatives was not required to sift through its records to determine if some other or less specific classification of documents relating to advertising and promotion might relate to the request. *See Hodges v. Dep't of Health*, 29 A.3d 1190 (Pa. Cmwlth. 2013) (holding that an agency, through an affidavit, "met its burden of proof that the requested records [did] not exist in its possession" and that, contrary to the requester's assertion, "[the agency] was not required to sift through all of its records in order to determine if something under a different spelling or classification might possibly relate to [the] request"). In light of the legal sufficiency of the affidavit denying the existence of the Item 3 records, we affirm the OOR's determination that the evidence presented proved that records responsive to Item 3 of the request do not exist.

23

Accordingly, for the foregoing reasons, we vacate and remand in part and affirm in part.[13]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] Requester also contends that the OOR erred by failing to address Requester's argument that DHS acted in bad faith by submitting a "flawed response" to the records request. Requester's Brief at 18-19. However, in light of our decision to vacate and remand, in part, and to affirm, in part, it would be premature to address Requester's assertions prior to final disposition of the case. *See Uniontown Newspapers, Inc. v. Dep't of Corr.*, 151 A.3d 1196, 1208 (Pa. Cmwlth. 2016) (declining to examine an agency's alleged bad faith under the RTKL until after disposition of the merits).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Equity Forward and : 
Mary Alice Carter, : 
           Petitioners : 
            : 
        v. : 
            : 
Department of Human Services, :   No. 225 C.D. 2018
           Respondent : 

O R D E R

AND NOW, this 17th day of May, 2019, the January 22, 2018 final determination of the Office of Open Records (OOR) is: (1) VACATED, in part, and this matter is REMANDED to the OOR with respect to Items 1 and 2 of the Right-to-Know Law Request (Request), and (2) AFFIRMED, in part, with respect to Item 3 of the Request, in accordance with the foregoing opinion.

        Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge